IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AMBER MARIE MUSE,  )
         Petitioner,  )
)
v.  )    Civil Action No. **3:12cv140–HEH**
)
TAMMY BROWN,  )
)
         Respondent.  )

## MEMORANDUM OPINION
(Granting Respondent's Motion to Dismiss)

Amber Marie Muse, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition") challenging her probation revocation. Muse argues entitlement to relief upon the following grounds:

Claim One   Counsel rendered ineffective assistance during the probation revocation proceeding by:

    (A)   Failing to research her case or "stand up and fight for [her] in Court";
    (B)   Failing to screen Muse for any other sentencing options such as "(Detention, Diversion etc.)"; and,
    (C)   Falsely stating that Muse would receive an eighteen-month sentence. (§ 2254 Pet. 4.)[1]

Claim Two   The trial court abused its discretion by imposing an "[e]xcessive amount of time," not considering sentencing options, and not ordering a presentence report ("PSI"). (*Id.*)

Claim Three   The trial court failed to address during sentencing Muse's then undiagnosed mental health issues. (*Id.* at 5.)

---

[1] The Court employs the pagination assigned by the Court's CM/ECF docketing system for Muse's § 2254 Petition.

Claim Four  Denial of effective assistance of counsel because "[m]y attorney told me . . . there would be no options of an appeal since I did not have any new charges." (*Id.*)

Respondent moves to dismiss the § 2254 Petition. Respondent contends that Muse procedurally defaulted Claims Two, Three, Four, and portions of Claims One (A)–(C). Moreover, Respondent asserts that all of Muse's claims lack merit. Respondent provided Muse with appropriate *Roseboro* notice.[2] (ECF No. 14.) Muse has not responded. For the reasons discussed below, the Court will dismiss all of Muse's claims for lack of merit.

## I.  PROCEDURAL HISTORY

### A.  Muse's Prior Criminal History

Muse possesses an extensive history of criminal convictions and probation violations in the Circuit Court of the City of Virginia Beach ("Circuit Court").[3] Between 2001 and 2004, the Circuit Court convicted Muse of various drug offenses and of grand larceny, but suspended the majority of each sentence.[4] Most relevant to the instant case, Muse repeatedly disregarded the terms of her probation leading to frequent revocations of

---

[2] *See Roseboro v. Garrison*, 528 F.3d 309 (4th Cir. 1975).

[3] Due to the number of offenses Muse committed, the Court references the hearing dates for each offense.

[4] Muse's prior offenses include the following: (1) on July 9, 2001, the Circuit Court sentenced Muse to three years in prison with all but thirty days suspended for attempted possession of cocaine, *Commonwealth v. Muse*, No. CR01–2406, at 1–2 (Va. Cir. Ct. July 10, 2001); (2) on April 24, 2002, the Circuit Court sentenced Muse to five years in prison with all but six months suspended for possession of cocaine, *Commonwealth v. Muse*, No. CR02–1236, 1–2 (Va. Cir. Ct. Apr. 26, 2002); (3) on June 23, 2003, the Circuit Court sentenced Muse to five years in prison with all but ninety days suspended for grand larceny, *Commonwealth v. Muse*, No. CR03–2052, 1–2 (Va. Cir. Ct. June 24, 2003); and, (4) on March 2, 2004, the Circuit Court sentenced Muse to three years in prison with all but two months suspended for possession of a Schedule II controlled substance, *Commonwealth v. Muse*, No. CR04–87, at 1–2 (Va. Cir. Ct. Mar. 5, 2004).

her probation. On numerous occasions prior to the instant revocation,[5] including December 12, 2001, February 26, 2002, April 24, 2002, December 23, 2002, June 23, 2003, March 2, 2004, May 25, 2005, November 10, 2009, and December 15, 2009, the Circuit Court revoked Muse's probation and the suspension of her sentences. *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087, at 1 (Va. Cir. Ct. May 31, 2005); Violation Report 1–3, *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087, at 1 (Va. Cir. Ct. filed Apr. 24, 2009); *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087, at 1 (Va. Cir. Ct. Jan. 4, 2010). Nevertheless, the Circuit Court ordered the majority of her original sentences re-suspended in each hearing.

During the January 5, 2010 sentencing hearing for Muse's November 10, 2009 and December 15, 2009 revocations, the Circuit Court re-suspended her sentences and ordered Muse to complete a substance abuse treatment and support program at Bethany Hall in Roanoke, Virginia. (Jan. 5, 2010 Tr. 3); *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087, at 1 (Va. Cir. Ct. Jan. 5, 2010). At the time, Muse was eight and a half months pregnant. The Court explained that the "[c]ompletion of the program at Bethany Hall is a specific condition of

---

[5] During the September 13, 2010 hearing for Muse's instant revocation, counsel asked Muse the following question regarding a prior revocation hearing: "[D]o you recall the judge telling you how extraordinary it was that he was going to give you this chance because at that time it was your seventh violation on these files? Violation number seven at that time." (Sept. 13, 2010 Tr. (ECF No. 13-8) 5.) Muse agreed she remembered. (Sept. 13, 2010 Tr. 5.) The Court employs the pagination assigned by the CM/ECF docketing system for this document.

3

probation." (Jan. 5, 2010 Tr. 3); *see* Major Violation Report 1, *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087 (Va. Cir. Ct. filed Jan. 8, 2010). The Court warned: "Now, Ms. Muse, this is it. If you don't comply with it this time, when you come back before me - - and it will be before me - - I will revoke all of the sentence, suspended sentence. You understand?" (Jan 5, 2010 Tr. 3.) Muse answered: "Yes, sir." (Jan. 5, 2010 Tr. 3.)

### B. The Instant Revocation

Three days later, on January 8, 2010, the probation officer filed a Major Violation Report noting that Muse violated the terms of her probation by leaving the Bethany Hall program and absconding from supervision. Major Violation Report 1–2, *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087 (Va. Cir. Ct. filed Jan. 8, 2010). During the September 13, 2010 hearing, with the assistance of counsel, Muse pled guilty to violating the terms of her probation. The Circuit Court imposed the remaining portion of her original sentences, an active sentence that Muse represents is more than thirteen years.[6] *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087, at 1 (Va. Cir. Ct. Sept. 24, 2010). Muse filed no appeal.

---

[6] The Circuit Court's revocation order contains no calculation of the imposed sentence. Due to Muse's extensive convictions and sentences, the exact length of her remaining sentence is unclear. Muse's attorney claimed that her remaining sentence was "over 14 years." Motion to Reconsider 1, *Commonwealth v. Muse*, Nos. CR98–1043, CR01–2406, CR02–1236, CR03–2052, and CR04–0087 (Va. Cir. Ct. filed Sept. 22, 2010). Muse represented the sentence as twelve years and twenty-three months in her state habeas petition, Petition for Writ of Habeas Corpus ¶ 3, *Muse v. Warden, Va. Corr. Ctr. for Women*, No. 111540, at 2 (Va. filed Aug. 23, 2011), and "thirteen years plus" in the instant § 2254 Petition (§ 2254 Pet. 1.).;

4

On August 23, 2011, Muse filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. In that petition, Muse argued that the Circuit Court abused its discretion in revoking all of her prior suspended sentences, that counsel provided ineffective assistance, and that the Circuit Court failed to consider her mental health issues. By Order entered on January 12, 2012, the Supreme Court of Virginia dismissed Muse's habeas petition. *Muse v. Warden, Va. Corr. Ctr. for Women*, No. 111540, at 2 (Va. Jan. 12, 2012). The Supreme Court of Virginia found that Muse defaulted her claims alleging error by the Circuit Court under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Muse failed to raise these claims at trial or on direct appeal. The Supreme Court of Virginia rejected Muse's ineffective assistance claims, holding "there is no constitutional right to counsel at the probation revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)." *Muse*, No. 111540, at 2.

## II. ASSERTION OF PROCEDURAL DEFAULT

Respondent raises the affirmative defense that Muse procedurally defaulted the claims of purported Circuit Court error (Claims Two and Three), Claim Four, and aspects of Claims One (A)–(C).[7] Absent a showing of cause for the default and resulting prejudice, or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). Here, Muse essentially argues that the ineffective assistance of counsel serves as cause for her defaulted claims, a claim that Muse also may have defaulted. Whether a petitioner can default an

---

[7] The Court notes that Respondent's decision to re-number Muse's claims makes the determination of whether Muse defaulted her claims more difficult.

5

ineffective assistance of counsel claim requires analysis of the United States Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Respondent fails to adequately address how *Martinez* applies to probation revocation proceedings, if at all. Due to the limited briefing by Respondent, the clear lack of merit of the underlying claims, and in the interests of judicial economy, the Court instead addresses the merits of Muse's claims. *See Daniels v. Hinkle*, No. 3:11CV675, 2012 WL 2792199, at *1 (E.D. Va. July 9, 2012) (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Muse initially had court-appointed counsel but ultimately retained counsel to represent her in the revocation proceedings. Regardless of whether counsel was appointed or retained, Muse fails to demonstrate that she had a constitutional right to counsel during her probation revocation proceedings.

The right to counsel, if any, at a probation revocation hearing flows from the Due Process Clause of the Fourteenth Amendment[8] rather than from the Sixth Amendment.[9] *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) (identifying "fundamental fairness-- the touchstone of due process" as the source for the right to counsel in revocation proceedings); *United States v. Taylor*, 414 F.3d 528, 535–36 (4th Cir. 2005). The

---

[8] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.
[9] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Supreme Court noted that "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Gagnon*, 411 U.S. at 790. Generally, counsel should be appointed where the probationer requests counsel

> based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id.* In doubtful cases, courts may also weigh the inability of the accused to speak effectively on her own behalf. *Id.* at 790–91. Nevertheless, the "participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings." *Id.* at 790.

The Circuit Court initially appointed counsel to represent Muse at her probation revocation hearing, but did so pursuant to sections 19.2–157[10] and 19.2–159(C)[11] of the

---

[10] This statute provides:

> [W]henever a person charged with a criminal offense the penalty for which may be ... confinement in the state correctional facility or jail, including charges for revocation of suspension of imposition or execution of sentence or probation, appears before any court without being represented by counsel, the court shall inform him of his right to counsel. The accused shall be allowed a reasonable opportunity to employ counsel or, if appropriate, the statement of indigence provided for in § 19.2–159 may be executed.

Va. Code Ann. § 19.2–157 (West 2012).

[11] As pertinent here, this statute provides:

Virginia Code, which authorize the appointment of counsel for an indigent defendant anytime he or she faces a sentence of imprisonment. The appointment itself did not involve the application of a *Gagnon* review. This sort of appointment of counsel which has its provenance in state statutes fails to create a constitutional right to counsel or the concomitant constitutional right to the effective assistance of counsel. *See Lerch v. Hinkle*, No. 3:08CV305, 2009 WL 603425, at *1 n.1 (E.D. Va. Mar. 9, 2009) (citing *United States v. Lester*, No. 95-5765, 1996 WL 28970, at *3 (6th Cir. Jan. 24, 1996); *United States v. Allgood*, 48 F. Supp. 2d 554, 559–60 (E.D. Va. 1999); *United States v. Drew*, 2 F. Supp. 2d 781, 783 & n.2 (E.D. Va. 1998)); *see also id.* at *3 (citing the above cases and W. Lafave, J. Israel, N. King & O. Kerr, *Criminal Procedure* §11.7(a) (4th ed. 2009)).[12] Nevertheless, despite the presence of counsel, whether retained or appointed, "this Court must conduct a *Gagnon* analysis to discern whether [Muse] had a constitutional *right* to counsel in this probation revocation hearing." *Lerch*, 2009 WL 603425, at *3 (citations omitted).

Muse fails to demonstrate the Supreme Court of Virginia's conclusion that she lacked a constitutional right to counsel at her revocation hearing is incorrect, much less

---

> The court shall also require the accused to complete a written financial statement to support the claim of indigency and to permit the court to determine whether or not the accused is indigent within the contemplation of law. The accused shall execute the said statements under oath, and the said court shall appoint competent counsel to represent the accused in the proceeding against him, including an appeal, if any, until relieved or replaced by other counsel.

Va. Code Ann. 19.2-159(C) (West 2012).

[12] Ultimately, Muse retained counsel for the revocation proceedings.

8

unreasonable. *See* 28 U.S.C. § 2254(d). First, Muse failed to present a colorable claim of innocence for her probation violation. *See Gagnon*, 411 U.S. at 790. Muse pled guilty and admitted at the revocation hearing that she "made an irrational choice" not to return to Bethany Hall. (Sept. 13, 2010 Tr. 5). Absconding from supervision and failing to complete the program at Bethany Hall provided the basis for the Circuit Court's imposition of the suspended sentence. Muse's failure to deny the violation prevents relief under the first part of the *Gagnon* test.

As to the second part of the analysis in *Gagnon*, Muse provides no substantial reasons which justify or mitigate her violation or which explain why she should continue to remain on probation. 411 U.S. at 790. She explains her reasons for leaving the Bethany Hall program and absconding from supervision as follows:

> When I got to the program, the understanding of the program that I had when I agreed to it with my past attorney was not the understanding I got when I got there. There's no excuse. It was a poor decision. When I got there I was told the program was quite a bit longer. They were kind of forcing me to separate from my husband, so to speak. I was rushed to labor and delivery the second night I was there at Roanoke Memorial Hospital due to severe pain, which I was due two weeks later. They told me I was stressed and I needed to take a lot of rest time. Instead of going back, I made an irrational decision and I went home and had my baby four weeks later.

(Sept. 13, 2010 Tr. 2.) Muse neither offers other evidence relevant to her defense nor explains why her mitigating reasons "are complex or otherwise difficult to develop or present." *Gagnon*, 411 U.S. at 790; *see Maxwell v. Barnett*, No. 89–6027, 1991 WL 22828, at *2 (4th Cir. Feb. 26, 1991) (explaining that *Gagnon* requires appointment of counsel only where the alleged violations are contested or "where the reasons that justify

9

or mitigate the violation are complex or otherwise difficult to develop and present") (citing *Gagnon*, 411 U.S. at 790)). Given Muse's significant, prolonged history of disregard for the terms of her probation and her concessions that "there's no excuse" and that her decision was "irrational," she fails to demonstrate substantial reasons justifying the violation or warranting her continuation on probation. *Gagnon*, 411 U.S. at 790. Muse was eight and a half months pregnant when the Circuit Court ordered her to complete the Bethany Hall program, and Muse understood that she had to remain in the program through the birth of her child. Her decision three days after beginning the program to return home to have the baby fails to qualify as a substantial reason that justifies or mitigates the violation.

Muse has failed to show that she had a constitutional right to counsel at her revocation hearing. Thus, Claims One (A)–(C) and Four fail to provide a basis for federal habeas relief. *See Lerch*, 2009 WL 603425, at *3. Accordingly, Claims One (A)–(C) and Claim Four will be dismissed.

## IV. PURPORTED ERRORS OF THE CIRCUIT COURT

In Claims Two and Three, Muse contends that the Circuit Court abused its discretion by sentencing her to an excessive sentence, failing to order a presentence report, failing to consider alternative sentencing options, and failing to realize that her recently diagnosed mental health issues led to her violation. These claims lack merit for two reasons. First, the trial court's alleged abuse of discretion provides no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not

the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Second, even if the Court found that the Circuit Court's revocation of Muse's probation and sentence amounted to an abuse of discretion, "'[o]nly a conclusion that the state court judge abused his discretion to the extent that petitioner was deprived of [her] federal constitutional rights to due process could justify any intrusion by this Court.'" *Cannady v. Everett*, No. 3:09cv41, 2010 WL 1169965, at *2 (E.D. Va. March 24, 2010) (quoting *Klier v. Wainwright*, 345 F. Supp. 947, 949 (S.D. Fla. 1971)).

No such due process violation exists here. The pertinent Virginia statute expressly granted the Circuit Court discretion to suspend Muse's imposed sentences and place Muse on probation and subsequently revoke the suspended sentences for any reason the court deemed sufficient. Va. Code § 19.2–303 (West 2012) ("After conviction, whether with or without jury, the court *may* suspend imposition of sentence or suspend the sentence in whole or part and in addition *may* place the accused on probation under such conditions as the court shall determine . . . .") (emphasis added); Va. Code § 19.2–306(A) (West 2012) ("In any case in which the court has suspended the execution or imposition of sentence, the court *may* revoke the suspension of sentence *for any cause the court deems sufficient* that occurred at any time within the probation period, or within the period of suspension fixed by the court.") (emphasis added). "'Proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking

probation.'" *Cannady*, 2010 WL 1169965, at *2 (quoting *United States v. Williams*, 378 F.2d 665, 666 (4th Cir. 1967)). The Circuit Court only needed to be "reasonably satisfied" that Muse violated the terms of her release in order to revoke her probation. *Id.* (citing *United States v. Cates*, 402 F.2d 473, 474 (4th Cir. 1968); *Williams*, 378 F.2d at 666; *Brown v. Slayton*, 337 F. Supp. 10, 13 (W.D. Va. 1971)).

The Circuit Court possessed ample evidence to establish that Muse violated the terms of her probation as Muse failed to complete the treatment program at Bethany Hall and absconded from supervision a mere three days after her sentencing for a previous probation revocation. Moreover, three days before the violation, the Circuit Court warned Muse, that any further violation of the terms of her probation would result in an imposition of the balance of her outstanding sentences.

Next, Muse argues the Circuit Court failed to consider her now properly diagnosed mental health issues at sentencing, failed to order a presentence report, failed to consider alternative sentences in the imposition of her new sentence, and imposed an excessive sentence. The record demonstrates no abuse of discretion by the Circuit Court. First, sentencing an individual with or without a presentence report fails to implicate the constitution. *See Stamper v. Baskerville*, 531 F. Supp. 1122, 1127–28 (E.D Va. 1982) (citing cases for proposition that "the issue of whether petitioner is entitled to a pre-sentence report at all is a matter of State law and not cognizable under a petition for a writ of habeas corpus").

Second, Muse contends that the Circuit Court failed to consider during sentencing her then undiagnosed mental health issues. (§ 2254 Pet. 5.) The Circuit Court cannot be faulted for failing to consider information not known at the time of sentencing. The Circuit Court addressed the known substance abuse problems and an inability or unwillingness to overcome these problems by ordering her to complete the inpatient substance abuse treatment program at Bethany Hall as a term of probation. While Muse complains here about the lack of proper diagnosis of her mental health issues at the time of sentencing, the record contains no reference to her mental health concerns as of the September 13, 2010 sentencing. The Circuit Court provided Muse with an opportunity for treatment while in Bethany Hall. Muse unilaterally decided not to avail herself of treatment and, consequently, proper diagnosis and treatment for mental illness when she failed to return to the Bethany Hall. Thus, one cannot fault the Circuit Court for failing to consider her undiagnosed mental illness.

Finally, the record reflects Muse's ongoing history of blatant disregard for the Circuit Court's orders and the terms of her probation. Muse refused the opportunity to serve an alternative sentence and receive substance abuse treatment and support during her pregnancy. Thus, Muse makes no persuasive argument that the Circuit Court acted in a constitutionally inappropriate manner by imposing Muse's previously suspended sentences of thirteen-plus years. Accordingly, Muse's claims that the Circuit Court abused its discretion or violated her constitutional rights lack merit.

## V. CONCLUSION

Respondent's Motion to Dismiss will be granted. The § 2254 Petition will be denied. The action will be dismissed and the Court will deny a certificate of appealability.[13]

An appropriate order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: March 5, 2013
Richmond, Virginia

---

[13] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Muse fails to meet this standard.